IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00968-MEH

BRUCE E. WIMBERLY,

    Applicant,

v.

DEAN WILLIAMS, Executive Director of CDOC,

    Respondent.

---

**ORDER DENYING APPLICATION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Applicant Bruce E. Wimberly's amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application"). ECF 7. The Court must construe Applicant's pleadings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons that follow, the Application is denied.

**I.     Background**

    On January 5, 1983, Applicant was sentenced to two years' imprisonment in Arapahoe County District Court Case No. 83CR228 after pleading guilty to first degree criminal trespass. ECF 17-1 at 1, 4. Thereafter, on January 13, 1984, Applicant was sentenced in Denver District Court to two separate first degree sexual assault charges after entering guilty pleas in Case Nos.

83CR1538 and 83CR1747. *Id.* at 1. In Case No. 83CR1747, Applicant was sentenced to an indeterminate term of a minimum of one day and a maximum of his natural life pursuant to the Colorado Sex Offenders Act of 1968 ("CSOA"), Colo. Rev. Stat. § 16-13-201 (relocated in 2002 to Colo. Rev. Stat. § 18-1.3-901 *et seq.*), to run concurrent with his sentence in Case No. 83CR1538 and consecutive with his sentence in Arapahoe County Case No. 83CR228. *Id.* at 1, 5. In Case No. 83CR1538, Applicant was sentenced to a term of twenty-four years, to run concurrent with his sentence in Case No. 83CR1747 and consecutive with his sentence in Arapahoe County Case No. 83CR228. *Id.* at 1, 6. On January 31, 1984, Applicant pled guilty to first degree burglary in Arapahoe County Case No. 83CR915 and was sentenced to sixteen years, to run concurrent with his sentence in Denver District Court Case No. 83CR1747. *Id.* at 1, 8.

On March 13, 1984, Applicant was transferred to the Colorado Department of Corrections ("CDOC") to begin serving his indeterminate sentence. *Id.* at 1. Applicant was eligible for parole release after reaching his parole eligibility date ("PED"). *Id.* Once he had reached his PED, Applicant was presented by the CDOC to the Colorado Board of Parole regularly from September 1994 through April 15, 2010, at which point he had served over twenty-six years on his sentence. *Id.* at 1-2. Each time he was reviewed by the Parole Board he was deferred. *Id.* at 2. Applicant thereafter was reviewed by the Parole Board seven times between 2011 and 2019. *Id.* His most recent review was on April 17, 2019, which resulted in deferral. *Id.* His next parole hearing date is in April 2020. *Id.*

In this action, Applicant alleges that his rights to equal protection and due process are being violated because he is being held beyond the expiration of the maximum sentence applicable to his underlying crimes without a judicial determination of whether he remains a threat to the public. Applicant requests relief in the form of a judicial hearing in Denver District Court for a

determination of whether he remains a threat to the public and, depending on the Denver court's finding, either release from prison or placement in a mental health treatment facility.

In earlier proceedings in this action, Respondent was directed to file a Preliminary Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d), exhaustion of state court or administrative remedies, and any other procedural defenses. In his Preliminary Response (ECF 13), Respondent stated he did not intend to assert the above-mentioned affirmative defenses.

## II. Discussion

### A. 28 U.S.C. § 2241

The writ of habeas corpus is available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A section 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A Section 2241 application must be filed in the district where the prisoner is confined. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

### B. The Colorado Sex Offenders Act of 1968

Applicant challenges the execution of the indeterminate sentence imposed under the CSOA in Denver District Court Case No. 83CR1747. The CSOA applies "to persons sentenced for offenses committed prior to November 1, 1998." Colo. Rev. Stat. § 18–1.3–902. The CSOA gives state district courts the discretion to either sentence a sex offender to imprisonment, or order that he or she be committed to the custody of the Colorado Department of Corrections "for an indeterminate term having a minimum of one day and a maximum of his or her natural life." Colo. Rev. Stat. § 18–1.3–904. For a court to order commitment under the CSOA, the defendant must

be found to be a danger to society beyond a reasonable doubt. Colo. Rev. Stat. § 18-1.3-912. The court must receive evidence on the issues of whether the defendant is mentally deficient, whether he or she could benefit from psychiatric treatment, whether he or she could be adequately supervised on probation, and whether the defendant, if at large, would constitute a threat of bodily harm to the public. Colo. Rev. Stat. §§ 18-1.3-908, 18-1.3-911. If the court "elects to exercise this option, it must do so in lieu of the sentence otherwise provided by law." *People v. Sanchez*, 520 P.2d 751, 753 (Colo.1974) (internal quotation marks and citation omitted). Thereafter, six months following the commitment, and every twelve months thereafter, the state parole board must "review all reports, records, and information" concerning the defendant. Colo. Rev. Stat. § 16-13-216(1)(a). The parole board may then parole the defendant or transfer him or her to "any facility under the jurisdiction of the department, if the board deems it to be in the best interests of said person and the public." Colo. Rev. Stat. § 16-13-216(2), (4).

The CSOA has been repeatedly upheld as constitutional on due process, equal protection, and Eighth Amendment grounds. *See People v. White*, 656 P.2d 690, 693–95 (Colo. 1983) (collecting cases); *see also Specht v. Patterson*, 386 U.S. 605, 607, 610–11 (1967) (holding that the predecessor to the CSOA, which contained a similar indeterminate sentencing provision, did not comport with due process because, unlike the CSOA, it did not provide for a full evidentiary hearing before sentencing).

C. Equal Protection Claim

Applicant asserts a violation of his equal protection rights because he is being treated differently than "civil committees," by which he appears to mean individuals serving indeterminate

sentences under civil commitment statutes, who are afforded periodic judicial review -- as opposed to parole board review -- to determine if they still pose a risk to the public. *See* ECF 7 at 4.

The equal protection clause of the Fourteenth Amendment forbids states from "deny[ing] to any person within [their] jurisdiction[s] the equal protection of the laws." U.S. Const. amend. XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege that: (1) similarly-situated individuals were treated differently; and (2) either the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling governmental interest, or, if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest. *Kleinsmith v. Shurtleff,* 571 F.3d 1033, 1047 (10th Cir. 2009).

Here, the alleged differential treatment is not based on a suspect classification, since sex offenders are not members of a suspect class. *See Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir. 1992).

Respondent argues that no fundamental right is involved, since the possibility of parole release does not qualify as a fundamental right. *See* ECF 17 at 6 (citing *Pettigrew v. Zavaras*, 574 F. App'x 801, 814-15 (10th Cir. 2014)). Applicant replies that "I am not requesting release on parole, but . . . [rather] a complete release to freedom without parole or commitment to the proper mental health treatment facility, if found to still constitute a threat to the public." ECF 23 at 7. To the extent that Applicant may be contending that his right to "personal liberty," in other words, his right to be free from restraint through incarceration, is a fundamental right (*see* ECF 7 at 9), the

5

argument fails.  The phrase "fundamental right" in the equal protection context refers to those particular rights, embodied in the U.S. Constitution, which the Supreme Court has recognized as having fundamental importance.  *Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.3d 929, 932 (10th Cir. 1989).  Examples of such rights include rights to privacy in certain reproductive decisions, the right to interstate travel, the right to associate to advance political beliefs, and the right to vote.  *Id.*  Any argument by Applicant that he has a fundamental right to release from incarceration, or to a judicial determination of whether he should be released, is simply a repetition of his contention, set forth in his subsequent due process claim, that he has a liberty interest in not being restrained, or in a judicial determination of whether he should continue to be restrained, for due process purposes.  Nothing in the Constitution can be read to guarantee citizens such a right.  *See id.* at 933, citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 33-34 (1973) (explaining that fundamental rights are those "explicitly or implicitly guaranteed by the Constitution").

Because the differential treatment asserted by Applicant is not based on a suspect classification or a fundamental right, it violates equal protection only if it is not rationally connected to a legitimate state interest.  *See Kleinsmith*, 571 F.3d at 1047.  Rational basis review is "highly deferential to state legislatures," and requires the court to indulge "a strong presumption of validity" to state laws.  *City of Harriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010).  Rational basis review is not a license for the court "to judge the wisdom, fairness, or logic of legislative choices."  *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993)).  Instead, the court must uphold the statute if there is "any reasonably conceivable state of facts" that could justify the differential treatment and may find a violation only if the classification "rests on grounds *wholly*

6

*irrelevant* to the treatment of the state's objective." *Bell*, 590 F.3d at 1194 (citation omitted) (emphasis in original).

In *People v. Kibel*, the Colorado Supreme Court found a rational basis for distinguishing between convicted sex offenders committed under the CSOA and civil committees:

> [S]ex offenders, unlike civil committees or mentally ill prisoners, ha[ve] been found guilty of crimes regarded by society as particularly heinous. The state therefore has a greater interest in protecting the public from sex offenders than from the other categories of committed persons, and the less stringent procedural protections afforded sex offenders are rationally related to this interest.

*People v. Kibel*, 701 P.2d 37, 42 (Colo. 1985) (citations omitted). The Colorado Supreme Court similarly explained in *People v. White*:

> Those committed civilly and other mentally ill criminals neither committed the same acts nor were they similarly situated as those persons who are committed under the C.S.O.A. In the case of a convicted sex offender, criminal guilt has been established and the state may properly take cognizance of the continuing presence of a threat to public safety rather than emphasizing the defendant's interest in his early release. As civilly committed individuals have committed no crime, the rationale for their continued confinement is less compelling, and they are generally accorded more procedural protections. Thus, the distinction drawn in the statutes between release procedures for those criminally convicted under the sex offenders act and others civilly committed does not violate equal protection.

656 P.2d 690, 694 (Colo. 1983).

In *dicta*, the *Kibel* court discussed a potential distinction between a lack of periodic judicial review before, versus after, the expiration of the maximum prison term that the defendant sentenced under the CSOA otherwise might have received for the underlying crime.[1] The court stated:

> The period following the expiration of the maximum permissible sentence arguably is analytically distinct from the initial period of confinement corresponding to the

---

[1] Respondent does not appear to dispute that Applicant has served the maximum term of the sentence applicable to the underlying crimes. *See* ECF 17 at 1.

7

> sentence that the defendant otherwise might have received. Sex offenders are confined for an indeterminate period because, upon their conviction of sex offenses as defined in the CSOA, a court finds in independent proceedings that they pose a danger to members of the public. [Colo. Rev. Stat.] §§ 16-13-207(2), 16-13-211; *see Specht v. Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211 18 L.Ed.2d 326 (1967). Without such a finding of danger to the public, sex offenders could be sentenced only to determinate prison terms. Because the extended period of confinement is based in part upon a finding of future dangerousness, the commitment during this period may be viewed as analogous to other commitments based upon predictions of future harm. *Ohlinger v. Watson*, 652 F.2d 775, 778 n. 8 (9th Cir. 1980) (indeterminate sentence for sex offender analogous to civil commitment). For this reason, the United States Supreme Court has indicated that the rational basis for distinguishing sex offenders from other persons committed because they constitute a public danger may disappear once the maximum sentence for the underlying crimes has expired. *Humphrey v. Cady*, 405 U.S. 504, 510-11, 92 S.Ct. 1048, 1052-53, 31 L.Ed.2d 394 (1972).

*Kibel*, 701 P.2d at 42 n.8.

*Humphrey*, on which the *Kibel dicta* relied, concerned the Wisconsin Sex Crimes Act ("WSCA"), which allowed the commitment of a convicted sex offender for treatment in lieu of sentencing "for a period equal to the maximum period authorized for the crime." *Humphrey*, 405 U.S. at 507. After the expiration of that period, the Wisconsin Department of Health and Social Services could petition the court for a five-year renewal of the commitment. *Id.* The court could then renew the commitment for five years if it found, after a hearing, that discharging the individual would be "dangerous to the public because of (his) mental or physical deficiency, disorder or abnormality." *Id.* (internal quotation marks omitted). Further five-year renewals could be similarly obtained. *Id.* The renewal orders could be based on "new findings of fact," and the renewal proceedings were "in no way limited by the nature of the defendant's crime or the maximum sentence authorized for that crime." *Id.* at 511.

The petitioner in *Humphrey* argued that his commitment under the WCSA after the expiration of the initial commitment term was essentially equivalent to civil commitment under

8

the Wisconsin Mental Health Act (WMHA), that a person committed under the WMHA had a statutory right to have a jury determine whether he or she meets the standards for commitment, and that his commitment *renewal* under the WCSA without such a jury therefore violated his equal protection rights. *Id.* at 508; *see also id.* at 501 n.7 (noting that the petitioner did not claim the right to a jury at the *initial* commitment). The respondent countered that because commitment under the WCSA is triggered by a criminal conviction and is merely an alternative to penal sentencing, it does not require the same procedural safeguards afforded in a civil commitment proceeding. The Supreme Court determined that while the respondent's argument "has force with respect to an initial commitment under the [WCSA], which is imposed in lieu of sentence, and is limited in duration to the maximum possible sentence," it "can carry little weight . . . with respect to the subsequent renewal proceedings, which result in five-year commitment orders based on new findings of fact, and are in no way limited by the nature of the defendant's crime or the maximum sentence authorized for that crime." *Id.* at 510-511. The Court went on to state that renewal orders under the WCSA "bear substantial resemblance to the post-sentence commitment that was at issue in *Baxstrom* [*v. Herold*]," *id.* at 511, in which the Supreme Court had determined that a petitioner was denied equal protection by a New York statutory procedure under which a person could be civilly committed at the expiration of his or her penal sentence without the jury review available to all other persons civilly committed in New York. *See Baxstrom v. Herold*, 383 U.S. 107, 110-112 (1966).

By contrast, here, the term of the maximum sentence for the underlying crime has no statutory significance under the CSOA. The commitment term under the CSOA is not measured by the period of the maximum underlying sentence, and no new procedures are triggered or rights

statutorily provided when that period expires. The expiration of the period of the maximum sentence for the underlying crime mattered in *Humphrey* because it marked the end of the offender's compulsory commitment under the WCSA, unless the state petitioned for a renewal, new proceedings unlimited by the nature of the defendant's crime were held, and the court granted the petition based on new findings of fact. As such, the *Humphrey* Court concluded only that the petitioner was due the same procedures as civil committees with respect to the new proceedings, which could take place only after the commitment term which had been imposed in lieu of sentence expired, at the end of the maximum sentence period for the underlying crime. Under the CSOA, there is only an initial commitment, which is imposed in lieu of sentence, indeterminate, and does not expire at the end of the maximum sentence period for the underlying crime. The distinction made in *Humphrey* between pre- and post-expiration of the maximum sentence term for the underlying crime thus does not apply here.

For similar reasons, the CSOA's review procedures are also unlike the commitment procedures at issue in *Baxstrom*. The commitment proceedings in *Baxstrom* were akin to civil proceedings because they took place after the petitioner had finished the criminal sentence imposed by the court. *See Baxstrom*, 383 U.S. at 110-112. Here, Applicant has not completed a sentence; his commitment under the CSOA is indeterminate. As such, *Baxstrom* does not support Applicant's position.

For these reasons, the expiration of the maximum sentence period for Applicant's underlying crimes does not undermine the well-established rational basis for the differing treatment of individuals committed under the CSOA and those committed under civil statutes, as articulated by the Colorado Supreme Court in *Kibel* and *White*.

In his Reply, Applicant presents the additional argument that "all sex offenders [should be] sentenced and treated the same and receive the same type of sentences pursuant to the level of their felony convictions"[;] in other words, all sex offenders "should be given a determinate sentence and mandatory parole with the requirements that they participate in the mandatory treatment programs required in prison before being considered for their mandatory period of parole, as set forth in the statutes." ECF 23 at 5. Applicant cites no authority in support of this contention. Under the CSOA, the state district court has statutory discretion to either sentence a convicted sex offender to imprisonment or, if it finds beyond a reasonable doubt that the offender is a danger to the public, order his or her indeterminate commitment. Colo. Rev. Stat. § 18–1.3–904. There is a rational basis for the treatment of offenders under the CSOA because they have been found beyond a reasonable doubt to pose a danger to the public. Applicant's argument lacks merit.

D.     Due Process Claim

Applicant also claims that the lack of periodic judicial review of his commitment violates his due process rights. The due process clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both substantive and procedural components. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Colorado Supreme Court has repeatedly held that the periodic parole board review afforded under the CSOA satisfies due process. *See White*, 656 P.2d at 693; *Kibel*, 701 P.2d at 43-44. As the court in *Kibel* explained:

> Here, the defendants' interest in regaining their liberty through fair and deliberate release mechanisms is at the core of interests requiring due process protection. *See [People v.] Chavez,* 629 P.2d [1040] at 1046 [Colo. 1981]. Yet, it cannot be said that substituting a judicial decision-maker for the parole board would necessarily decrease the risk that release in appropriate circumstances would be withheld erroneously from sex offenders. Like the court, the parole board is a neutral body with no interest in the outcome of the cases before it. *See State ex rel. Terry v. Percy,* 95 Wis.2d 476, 290 N.W.2d 713, 716 (1980) (due process requirements met when reexamination of sex offender confinement performed by neutral decision-maker and reviewed by Department of Health and Social Services). Moreover, a court already has determined, prior to commitment, that the sex offender constitutes a danger to society beyond a reasonable doubt, § 16-13-211(2); the parole board therefore does not make an initial determination of dangerousness, but rather is called upon only to monitor the offender for changes in character. We therefore reaffirm that "the mandated review by the board of parole within six months after the individual is committed and every year thereafter satisfies continuing procedural due process requirements." *White,* 656 P.2d at 693.

*Kibel*, 701 P.2d at 43-44. Although the *Kibel* court acknowledged that it was not deciding whether due process might require judicial review after the expiration of the term of the maximum underlying sentence, *see id.* at 44 n.11, this Court discerns no reason why a parole board would suddenly become more likely than a judicial decisionmaker to erroneously withhold release after the period corresponding to the maximum sentence for the underlying crime expires. For the reasons enunciated in *Kibel*, the Court determines that the procedures provided in the CSOA do not violate due process.

To the extent that Applicant also may be asserting a due process violation based on the lack of parole board review prior to his PED, the Court notes that Applicant previously asserted that claim in *Bruce Edward Wimberly v. Joe Ortiz, et. al,* No. 04-cv-00632-ZLW (D. Colo. Mar. 31,

2004). The claim, and the entire action, were dismissed as untimely under the one-year limitation period in 28 U.S.C. § 2244(d). *See Wimberly*, No. 04-cv-00632-ZLW, Order and Judgment of Dismissal, May 28, 2004. "The doctrine of res judicata, or claim preclusion, bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979) (internal quotation marks omitted). "[A] dismissal on limitations grounds is a judgment on the merits" for purposes of claim preclusion. *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir. 1991). As such, any re-assertion of such a claim by Applicant is barred in this action.

## III. Conclusion

Based on the foregoing, it is hereby

**ORDERED** that Applicant's amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF 7) is **denied.** It is

**FURTHER ORDERED** that this action is **dismissed with prejudice.** It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is **denied.** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he also must pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated at Denver, Colorado, this 28th day of February, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge